*Indictment filed 9/5/19, counflow 3 mins*

**ORIGINAL**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA             :

      - v. -                         :
                                                            **SEALED**
                                           :   **INDICTMENT**

JEFFREY N. CROSSLAND,
RAYMOND E. ROBINSON, and           :
STEPHEN C. PARENTE,
                                            :   19 Cr. 645

              Defendants.

- - - - - - - - - - - - - - - - - -X

**COUNT ONE**
(Conspiracy to Commit Wire Fraud)

The Grand Jury Charges:

**Relevant Persons and Entities**

1.   At times relevant to this Indictment:

    a.   JEFFREY N. CROSSLAND, the defendant, was a managing member of Crossland Capital Partners, LLC ("Crossland Capital"), a purported broker dealer focused on "real estate related capital raising" located in Santa Monica, California. He also controlled JC Funding Group, also located in Santa Monica, which was represented to be a corporate entity overseeing various subsidiary lending companies under the JC Funding name.

    b.   STEPHEN C. PARENTE, the defendant, controlled Eagle Capital Investment Partners, LP, a purported private financial advisory consultancy practice based in

Georgia. He also controlled entities in the names of various iterations of Eagle Capital Fund (collectively referred to as "Eagle Capital").

        c. RAYMOND E. ROBINSON, the defendant, was a minister. He was employed by a church building company based in Missouri, ran Ray Robinson Ministries, a purported consulting firm for churches, and had an ownership interest in Eagle Capital, along with PARENTE.

        d. In or about early 2013, JEFFREY N. CROSSLAND, RAYMOND E. ROBINSON and STEPHEN C. PARENTE, the defendants, began working together purporting to offer loans to churches and others for construction projects. ROBINSON was responsible for finding clients, particularly churches. PARENTE was responsible for reviewing clients' financial profiles and assisting them through the loan application process. CROSSLAND was supposed to provide the funding for the loans.

### The Scheme To Defraud

    2. During the relevant time period, JEFFREY N. CROSSLAND, RAYMOND E. ROBINSON and STEPHEN C. PARENTE, the defendants, perpetrated a scheme to defraud clients (the "Victims") by inducing them to enter into purported loan agreements. Pursuant to these loan agreements, the Victims were required to deposit money into a "production account" or "escrow holding account" at an Ohio bank (the "Escrow Account"). Based

on the defendants' false representations that the deposit money would remain safe and secure in the Escrow Account, the Victims deposited a total of over $3.5 million dollars into the Escrow Account. Contrary to the defendants' representations, the money did not remain in the Escrow Account. Instead, it was used for others' personal and business expenses, transferred to bank accounts abroad, and used to make payments to certain Victims in order to perpetuate and conceal the fraud. The purported loans were never funded and millions of dollars of the Victims' "deposits" were never returned.

### Means and Methods of the Conspiracy

3. Among the means and methods by which JEFFREY N. CROSSLAND, RAYMOND E. ROBINSON and STEPHEN C. PARENTE, the defendants, would and did carry out the conspiracy were the following:

    a. Among the Victims were four churches and a developer. JEFFREY N. CROSSLAND, RAYMOND E. ROBINSON and STEPHEN C. PARENTE targeted Victims, particularly the church victims, by capitalizing on ROBINSON's role as a minister and builder of churches. They represented that they, through Eagle Capital and JC Funding, were in the business of providing unconventional loans for, among other things, construction and renovation. They also represented that CROSSLAND had access to money to fund the loans.

b. CROSSLAND, ROBINSON and PARENTE created term sheets and loan agreements requiring that the Victims provide a deposit as security for their loans. In order to induce the Victims to enter into the loan agreements and forward their deposits, CROSSLAND, ROBINSON and PARENTE made various representations to the Victims including that their deposit money would be held in the Escrow Account and that it would be safe from loss.

c. At the time CROSSLAND, ROBINSON and PARENTE made those representations, they knew the deposit money was not going to remain in the Escrow Account and that it would not be safe from loss and they agreed not to disclose that information to the Victims.

d. CROSSLAND, ROBINSON and PARENTE had the Victims execute the term sheets and loan agreements and instructed them to wire transfer their deposit money to the Escrow Account, which was controlled by an attorney ("Attorney-1"). After receiving those instructions, the Victims wire transferred their deposit money to the Escrow Account.

e. Shortly after the Victims wire transferred their deposit money, acting on CROSSLAND's instructions, Attorney-1 transferred more than half of the deposit money to bank accounts controlled by an individual in Michigan ("Individual-1") and an entity controlled by Individual-1.

4

Individual-1 then transferred much of that deposit money to bank accounts outside the United States.

   f. Attorney-1 also transferred nearly $1 million of the deposit money to the bank account of a New Jersey law firm. Thereafter, approximately $400,000 was transferred to a bank account controlled by a second individual ("Individual-2"), and the remaining approximately $600,000 was used to pay Individual-2's tax obligations and legal fees.

   g. In order to perpetuate the scheme and conceal the fraud, CROSSLAND had Attorney-1 and Individual-1 transfer some of certain Victims' deposit money to other Victims and falsely represent that these money transfers were loan draw payments.

   h. In actuality, CROSSLAND never had money to fund the Victims' loans. In addition to providing certain Victims with funds the defendants claimed to be loan draw payments, in order to perpetuate the scheme and conceal the fraud, CROSSLAND and ROBINSON also participated in telephone conversations with and sent emails to the Victims, with the intention of (a) lulling them into believing that their loans would be funded and/or their deposits returned, and (b) preventing them from reporting their conduct to law enforcement authorities and/or taking legal action against them.

        i.    In this way, from in or about April 2013 through in or about March 2015, CROSSLAND, ROBINSON and PARENTE fraudulently induced Victims to transfer over $3.5 million dollars to the Escrow Account.

## STATUTORY ALLEGATIONS

        4.    From in or about April 2013 through in or about March 2015, in the Southern District of New York and elsewhere, JEFFREY N. CROSSLAND, RAYMOND E. ROBINSON and STEPHEN C. PARENTE, the defendants, and others known and unknown to the Grand Jury, willfully and knowingly, combined, conspired, confederated and agreed, together and with each other, to commit an offense against the United States, to wit, wire fraud, in violation of Title 18, United States Code, Section 1343.

        5.    It was a part and object of the conspiracy that JEFFREY N. CROSSLAND, RAYMOND E. ROBINSON and STEPHEN C. PARENTE, the defendants, and others known and unknown to the Grand Jury, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises, would and did transmit and cause to be transmitted by means of wire and radio communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, in violation of Title 18,

United States Code, Section 1343, to wit, JEFFREY N. CROSSLAND, RAYMOND E. ROBINSON and STEPHEN C. PARENTE, participated in a scheme to induce Victims to wire transfer over $3,650,000, under the false pretense that the money was deposit money that would remain in a bank account where it would be safe from loss, and sent lulling letters and emails to perpetuate and conceal the fraud, which scheme involved the use of interstate wires in furtherance of those acts.

(Title 18, United States Code, Section 1349).

### Forfeiture Allegation

6.   As a result of committing the offense alleged in Count One of this Indictment, JEFFREY N. CROSSLAND, RAYMOND E. ROBINSON and STEPHEN C. PARENTE, the defendants, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461, any and all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of said offense, including, but not limited to a sum of money in United States currency representing the amount of proceeds traceable to the commission of said offense that the defendants personally obtained.

### Substitute Asset Provision

7.   If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

a. cannot be located upon the exercise of due diligence;

b. has been transferred or sold to, or deposited with, a third person;

c. has been placed beyond the jurisdiction of the Court;

d. has been substantially diminished in value; or

e. has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p) and Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of the defendants up to the value of the above forfeitable property.

(Title 18, United States Code, Sections 981, 982;
Title 21, United States Code, Section 853; and
Title 28, United States Code, Section 2461.)


_____
FOREPERSON

_____
GEOFFREY S. BERMAN
United States Attorney