Case 7:19-cr-00645-KMK Document 153 Filed 11/25/26 Page 1 of 5

Federal Defenders
OF NEW YORK, INC.

Southern District
52 Duane Street, 10th Floor
New York, NY 10007
Tel: (212) 417-8700 Fax: (212) 571-0392

Tamara L. Giwa
*Executive Director*

Jennifer L. Brown
*Attorney-in-Charge*

November 25, 2026

**By ECF and Email**

Hon. Kenneth M. Karas
United States District Judge
Southern District of New York
300 Quarropas Street
White Plains, NY 10601

Re: *United States v. Raymond Robinson*, 19 Cr. 645 (KMK)

Dear Judge Karas:

With the support of Probation, and without objection from the Government, we write to respectfully request early termination of Raymond Robinson's supervised release under 18 U.S.C. § 3583(e)(1). Mr. Robinson has completed more than two years of a three-year term. He has done so without any violation, while maintaining a stable residence and making consistent restitution payments. As a result, he has been transferred to Probation's low-intensity caseload.

Now, at nearly 75 years old, and after experiencing a serious assault and related medical difficulties, Mr. Robinson hopes to leave New York City, return to his hometown in southern Illinois, and visit with friends and family. Continued supervision would complicate those plans while serving little rehabilitative or public-safety purpose. Probation agrees that Mr. Robinson has demonstrated an ability "to lawfully self-manage beyond the period of supervision." *See* Ex. A, Sept. 16, 2026 Email from Probation. The Court should grant early termination of Mr. Robinson's supervised release.

## BACKGROUND

On September 8, 2021, Mr. Robinson pleaded guilty to one count of conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1349. On March 17, 2022, Your Honor sentenced him to 42 months' imprisonment followed by three years of supervised release and imposed a $100 special assessment and $3,226,950 in restitution.

Mr. Robinson's supervised release commenced on August 13, 2024. Since then, he has demonstrated his commitment to successfully reentering the community. He has incurred no violations or new charges, made consistent restitution payments, and complied with Probation's directives. He has also maintained stable housing and integrated into the community by helping

Case 7:19-cr-00645-KMK Document 153 Filed 11/25/26 Page 2 of 5



people in his former shelter and his current building with applications for public assistance. He also hopes to organize a Bible study and discussion group for his neighbors.

Mr. Robinson is retired and receives $3,059 in gross monthly Social Security benefits. He has paid his $100 special assessment and $16,580.68 toward restitution with consistent payments. He arranged for payments to be made automatically from his Social Security income and intends to continue that arrangement after supervision ends. Probation describes his adjustment to supervised release as "favorable" and, in light of his compliance, transferred him to its low-intensity caseload (LIC). He now reports online monthly without issue.

Mr. Robinson's circumstances support his request for early termination. He struggles to afford life in New York City, paying 30 percent of his Social Security income to live in a 14-by-8-foot supportive housing unit. He has saved what he can in the hope of returning to southern Illinois, where he spent much of his life, has family support, and expects living expenses to be lower. He also hopes to visit relatives and friends in other states.

Mr. Robinson's wish to leave New York is also informed by his experience of falling victim to a serious assault. In 2024, while seated outside a Brooklyn coffee shop, he was attacked and suffered facial injuries requiring dental reconstruction. According to Mr. Robinson, complications associated with his pain management following that procedure subsequently led to an ulcer and severe bleeding requiring hospitalization, a blood transfusion, and a nursing home stay. He reports continued difficulty eating and drinking, along with anxiety and depression, for which he has received therapy. Apart from medical appointments and essential errands, he rarely leaves his apartment because he feels unsafe. He also has diabetes and high blood pressure and wants to spend the coming years closer to family and in a community where he feels secure.

## LEGAL STANDARD

"Congress intended supervised release to assist individuals in their transition to community life. Supervised release fulfills rehabilitative ends, distinct from those served by incarceration." *United States v. Johnson*, 529 U.S. 53, 59 (2000). Under 18 U.S.C. § 3583(e)(1), after one year of supervised release, the Court may terminate supervision if such action is "warranted by the conduct of the defendant released and the interests of justice." 18 U.S.C. § 3583(e). When determining whether to grant such an application, the Court is instructed to "consider 'the factors set forth in [18 U.S.C.] §§ 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7).'" *United States v. Harris*, 689 F. Supp. 2d 692, 694 (S.D.N.Y. 2010) (quoting 18 U.S.C. § 3583(e)). Courts may not consider the factors under section 3553(a)(2)(A), namely the "seriousness of the offense," "respect for the law," or the need "to provide just punishment for the offense." *Tapia v. United States*, 564 U.S. 319, 325–26 (2011) (citations omitted); *see also Esteras v. United States*, 606 U.S. 185 (2025) (courts may not consider the retributive sentencing factor set forth in § 3553(a)(2)(A) when revoking supervised release under § 3583(e)).

Case 7:19-cr-00645-KMK Document 153 Filed 11/25/26 Page 3 of 5



Congress's decision to omit retributive, backward-looking considerations from the Court's analysis of whether early termination of supervised release is appropriate is consistent with the Sentencing Commission's guidance. In its 2025 amendments to the Sentencing Guidelines (effective November 1, 2025), the Sentencing Commission included a new policy statement that encourages the Court, as soon as practicable after a defendant's release from imprisonment, to conduct an individualized assessment to determine whether modification or reduction of the conditions of supervised release is appropriate. *See* U.S.S.G. § 5D1.4(a) (Modification, Early Termination, and Extension of Supervised Release). In performing the "individualized assessment of the need for ongoing supervision," U.S.S.G. § 5D1.4(b), the Guidelines suggest that the Court consider the supervisee's violations (if any), ability to "lawfully self-manage," "substantial compliance" with the conditions of supervision, "engagement in appropriate prosocial activities," "demonstrated reduction in risk level or maintenance of the lowest category of risk" while on supervision, and whether termination would jeopardize public safety. *Id.* cmt. n.2.

**THE INTERESTS OF JUSTICE AND MR. ROBINSON'S CONDUCT WHILE ON SUPERVISION WARRANT EARLY TERMINATION OF HIS SUPERVISED RELEASE**

Here, the factors identified by the Sentencing Commission weigh strongly in favor of early termination. By establishing a stable residence, maintaining restitution payments, and following Probation's directives, Mr. Robinson has demonstrated his ability to lead a law-abiding life without the need for continued supervision.

Nor is continued supervision necessary to ensure Mr. Robinson's restitution payments. His restitution obligation will remain in effect notwithstanding the termination of his supervised release, and he has established an automatic payment arrangement that he intends to maintain. *See, e.g., United States v. Smith*, 20 Cr. 244 (LJL) (S.D.N.Y. 2025) (granting early termination of supervised release and noting that the defendant's "restitution obligations shall continue"); *United States v. Sabaly*, 20 Cr. 473 (VM) (S.D.N.Y. 2025) (same). Courts in this District have granted early termination where defendants had remaining restitution balances comparable to or higher than Mr. Robinson's. *See, e.g., United States v. Harris*, 689 F. Supp. 2d 692 (S.D.N.Y. 2010) (granting early termination of supervised release where there was nearly $200,000,000 in outstanding restitution).

Additionally, Mr. Robinson is highly unlikely to recidivate. Research shows a link between age and a defendant's likelihood of recidivism. U.S. Sent'g Comm'n, *The Effects of Aging on Recidivism Among Federal Offenders* 3 (2017). While recidivism rates are as high as 67 percent for offenders who are under 21 years old, rates of rearrest drop to below 14 percent for defendants who are 65 years old and older. *Id.* Mr. Robinson's age, together with his successful adjustment to supervision, further supports the conclusion that he presents a low risk of recidivism.

Finally, the interests of justice strongly favor allowing Mr. Robinson greater freedom to relocate and travel to visit family and friends given that he is nearly 75 years old, has significant

Case 7:19-cr-00645-KMK Document 153 Filed 11/25/26 Page 4 of 5



health issues, was violently assaulted in Brooklyn, and is struggling to afford life in New York City.

Early termination of supervised release is a mechanism that courts in this district have employed to terminate unnecessarily lengthy terms of supervised release for individuals who have accomplished the rehabilitative purposes that supervised release was intended to serve. *See, e.g.*, *United States v. Cruz*, 19 Cr. 770 (JMF) (S.D.N.Y. 2025) (granting early termination of supervised release); *United States v. Cohen*, 23 Cr. 134-3 (VSB) (S.D.N.Y. 2025) (same); *United States v. Bonilla Acevedo*, 17 Cr. 604 (CM) (S.D.N.Y. 2025) (same); *United States v. Smith*, 20 Cr. 244 (LJL) (S.D.N.Y. 2025) (same); *United States v. Mangual*, 23 Cr. 429 (JGK) (S.D.N.Y. 2024) (same); *United States v. Grullon*, 23 Cr. 106 (PGG) (S.D.N.Y. 2023) (same); *United States v. Zavala*, 18 Cr. 735 (KPF) (S.D.N.Y. 2023) (same); *United States v. Enriquez*, 20 Cr. 455 (RA) (S.D.N.Y. 2023) (same); *United States v. Pina*, 22 Cr. 27 (VSB) (S.D.N.Y. 2023) (same); *United States v. Misulovin*, 22 Cr. 592 (RA) (S.D.N.Y. 2023) (same); *United States v. Rosario*, 11 Cr. 932 (PGG) (S.D.N.Y. 2023) (same); *United States v. Bills*, 09 Cr. 507 (KMW) (S.D.N.Y. 2023) (same); *United States v. Sam*, 16 Cr. 184 (JGK) (S.D.N.Y. 2018) (same); *United States v. Cummings*, 06 Cr. 481 (JGK) (S.D.N.Y. 2017) (same); *United States v. Bethea*, 05 Cr. 1234 (DC) (S.D.N.Y. 2015) (same); *see also United States v. Young*, 20 Cr. 201 (KMW) (S.D.N.Y. 2024) (terminating probation early).

Early termination lifts a psychological weight from such individuals, freeing them of their ties to past misconduct. *See United States v. Ortiz*, 06 Cr. 268 (JBA) (D. Conn. Jan. 4, 2023) ("The Court is mindful of the significance to defendants of 'being off the papers' and becoming one's own person without reporting requirements and without having to request permission to engage in travel or other activities. Thus, terminating supervision, i.e., 'the papers,' represents a form of freedom which an individual who has achieved the rehabilitative purposes of supervision may seek."). Early termination is thus important to "reward [a defendant's] determination to lead a responsible life and the success he has already realized" as it also "remind[s] others that such laudable progress is possible and will reap rewards." *United States v. Jiminez*, 2021 WL 535208 (E.D.N.Y. Feb. 12, 2021). Mr. Robinson has demonstrated that he can live responsibly and comply with his legal obligations without intensive oversight. Terminating supervision now would recognize that success while allowing him to spend his remaining years closer to family and in a community where he feels safe.

## CONCLUSION

Mr. Robinson is an excellent candidate for early termination of supervised release given that he has already served most of his term without issue, consistently pays restitution, and is unlikely to recidivate. He has successfully reintegrated into the community. Additionally, his safety concerns in New York City and his desire to spend the coming years closer to family and friends weigh in favor of early termination. With Probation's support and without objection from the Government, we respectfully request that the Court grant early termination of Mr. Robinson's supervised release.

Thank you for your time and attention to this matter.

Case 7:19-cr-00645-KMK Document 153 Filed 11/25/26 Page 5 of 5



Application is granted. The Court wishes Mr. Robinson the best.

So Ordered.

11/25/26

Respectfully submitted,

/s/ Ebun Akinbode
Ebun Akinbode, Legal Extern
Ariel C. Werner, Assistant Federal Defender
(212) 417-8770

cc: Counsel of record
Probation Officers Katrina Short, Lisa Faro (S.D.N.Y.) (by email)